Attachment A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Saundra L. White
Federal Correctional Institution
P. O. Box 7006
Marianna, FL 32447-7006
(Full name under which you were convicted,
prison number, place of confinement, and
full mailing address)

Petitioner,

vs.

Warden Hudgins, et al.
(Name of Warden or other authorized person
where you are incarcerated)

Respondent.

**FILED**

AUG 2 3 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

**Petition for Habeas Corpus
Pursuant to 28 U.S.C. § 2241**

Civil Action No. 5:22-cv-203 ~~5:21-cv-0069~~
(to be assigned by Clerk)

Bailey/Mazzone/Rubenstein

**Important notes to read before completing this form:**

★   Please read the entire petition **before** filling it out. Answer **only** those questions which pertain to your claim(s).

1.   This petition concerns (check the appropriate box):

   ☐ a conviction
   ☐ a sentence
   ☐ jail or prison conditions
   ☒ prison disciplinary proceedings
   ☐ a parole problem
   ☒ other, state briefly: Petitioner challenges the execution or implementation of her federal prison sentence that includes: computation of her sentence by prison officials, disciplinary actions, prison transfers, etc.

Attachment A

_____
_____
_____

2.  Are you represented by counsel?   ☐ Yes   ☒ No

    If you answered yes, list your counsel's name and address: _____
    _____

3.  List the name and location of the court which imposed your sentence:
    United States District Court for the District of Maryland-Southern Division
    6500 Cherrywood Lane, Greenbelt, MD 20770.

4.  List the case number, if known: 8:13-CT-00436-PWG

5.  List the nature of the offense for which the sentence was imposed:
    Wire Fraud, Mail Fraud, Money Laundering and Identity Theft.

6.  List the date each sentence was imposed and the terms of the sentence:
    February 3, 2016. Sentence was 132 months and three years - Supervised Release.

7.  What was your plea to each count? (Check one)

    ☐  Guilty
    ☒  Not Guilty
    ☐  Nolo Contendere

Attachment A

8. If you were found guilty after a plea of not guilty, how was that finding made?

☒ A jury
☐ A Judge without a jury
☐ A Magistrate Judge without a jury

9. Did you appeal from the judgment of conviction or imposition of the sentence?

☒ Yes ☐ No

10. If you did appeal, give the following information for each appeal:

A. Name of Court: U.S. Court of Appeals for Fourth Circuit
B. Result: Affirmed the U.S. District Court
C. Date of Result: March 9, 2017
D. Grounds raised (List each one): Petitioner was denied a Franks hearing after the Government's Star Witness testimony revealed that there was no probable cause to search and seize items from Petitioner's personal residence. The enhancements were illegal and unsupported by the evidence. The sentence was unreasonable.

Note: if you filed an appeal in more than one court, attach an additional sheet of paper of the same size and give all of the information requested in Question 10, A through D.

11. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal? This is called a post-conviction pleading.

☒ Yes ☐ No

If your answer was yes, complete the following sections:

A. First post-conviction proceeding:
   1. Name of Court: U.S Supreme Court

Attachment A

    2.    Nature of Proceeding: **WRIT OF CERTIORARI**
    3.    Grounds Raised: **CIRCUIT DIFFERENCES FOR FRANKS HEARING**
    4.    Did you receive an evidentiary hearing? ☐ Yes ☒ No
    5.    Result: **Certiorari was denied**
    6.    Date of Result: **June 12, 2017**

B.    Second post-conviction proceeding:
    1.    Name of Court: **U.S. District Court for District of Maryland**
    2.    Nature of Proceeding: **filed 28 USC §2255**
    3.    Grounds Raised: **Ineffective Counsel, Structural Errors, Prosecutorial + Judicial Misconduct**
    4.    Did you receive an evidentiary hearing? ☐ Yes ☒ No
    5.    Result: **Has Not been decided**
    6.    Date of Result: **N/A**

C.    Did you appeal to the result of the post conviction proceeding(s) to the highest court having jurisdiction?
    1.    First proceeding:    ☒ Yes    ☐ No    Result: **N/A**
    2.    Second proceeding:    ☒ Yes    ☐ No    Result: _____

D.    If you did not appeal the adverse result of the post-conviction proceeding(s), explain briefly why not: **§2255 action pending for Reconsideration and pending appeal for COA**

12.    For your information, the following is a list of the most frequently raised grounds for relief in applications for habeas corpus pursuant to 28 U.S.C. §2241. You may raise any grounds which you may have other than those listed. However, in this application, you should raise all available grounds on which you base your petition. **Do not check** any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. **The petition will be returned to you if you merely check one or more of the grounds:**

    A.    U.S. Parole Commission unlawfully revoked my parole.
    B.    Federal Bureau of Prisons unlawfully computed my sentence.

Attachment A

C. Federal Bureau of Prisons unlawfully denied me credit for time served in state or federal prison.
D. Federal Bureau of Prisons or State prison system unlawfully revoked my good time credits.
E. There is an unlawful detainer lodged against me.
F. I am a citizen and resident of a foreign country and I am in custody for an act which I had a right to commit under the laws of my country.
G. The act for which I was convicted is no longer considered to be a crime, and I cannot raise this issue in a §2254 petition or a §2255 motion.

**CAUTION: if you fail to set forth all of the grounds in this petition at this time, you may be barred from presenting additional grounds at a later date.**

State clearly every ground on which you are seeking relief. Summarize briefly the facts supporting each ground. If necessary, attach a total of five (5) typed or ten (10) neatly printed pages maximum for all grounds and all attachments.

A. Ground one:

Respondent failed to properly execute Petitioner's sentence when it unlawfully computed Petitioner's Release date by unlawfully revoking Petitioner's good time credit, and failing to provide Petitioner with the correct jail time credit.

Supporting facts: tell your story briefly without citing cases or law. You are cautioned that you must state facts, not conclusion, in support of your grounds. A "rule of thumb" to follow is this: who did exactly what to violate your rights at what time and place).

Petitioner received 594 days for good conduct time that is equal to 20 months. However Respondent unlawfully revoked eighty-one GCT credit. Respondent unlawfully denied Petitioner credit for the time that she spent in jail before her trial and before sentencing. Petitioner's jail time credit is fifteen(15) months and 16 days. Therefore, Petitioner's release date should be February 2, 2023, ___ . See Exh. L

B. Ground two:

Respondent failed to execute Petitioner's sentence when it denied Petitioner due process when it accessed sanctions against Petitioner for

Attachment A

violations that she was not given notice that her actions constituted a violation and or the Rule was vague and thus unconstitional .

SUPPORTING FACTS:

On 10/26/2016, Petitioner was arguing with another inmate and several inmates was holding both Petitioner and the other inmate to prevent a fight between them. Even though profanity was used and both parties were swinging at each other, no physical fight broke out. In other words no punches were landed Also, there were no injuries to either party. However, an incident report was falsified by the Commissary Officer (Mr. Wilburn). Wilburn falsely reported that Petitioner and the other inmate was fighting by hitting each other with commissary bags. Wilhelm further stated that the camera in the commissary waiting area recorded the event whereby Petitioner and the other inmate were actually fighting. Petitioner requested to see the camera footage and tape but the DHO Officer disallowed this request. Instead Petitioner was allowed
CONTINUED ON ATTACHED Page No: 11(a) - 11(b)

C.   Ground three:

Respondent violated Petitioner's First Amendment rights when it disallowed and interfered with Petitioner's right to access the Courts, and interfered with Petitioner's receiving and mailing Legal documents, etc.

Supporting facts:
On May 13, 2018, Petitioner placed her 28 USC 2255 motion in the mailbox slot in her Unit (K2) along with two more letters addressed to two other individuals. The envelope containing Form 2255 along with one of the other letters contained enough stamps for certified mail with Receipts. The other letter was not marked as Certified mail but it was marked legal mail. All of the letters were marked Legal mail. None of Petitioner's mail reached its destination and Petitioner never recieved the green card receipts for any certified mail. Continued on Pg 11 (C)

D.   Ground four:

Respondent violated Petitioner's procedural and substantive due process rights by re-incarcerating her after she had been granted and designated home confinement in June 2020 pursuant to the CARES ACT even though Petitioner did not commit a crime or violate any conditions of her home confinement.

11(a)

Continuation of Facts Supporting Ground Two(2)

to select a staff representative to view the camera and determine whether it revealed that Petitioner and the other inmate was fighting. During the DHO hearing, Petitioner's representative testified that he did see Petitioner move to the other side of the overcrowded commissary lobby. However, at no time did Petitioner's representative indicate that he observed or reviewed any camera images showing Petitioner physically fighting or attempting to strike any inmate on 10/26/2016. Petitioner's witness (another inmate) testified that she did not see Petitioner strike anyone or anyone strike Petitioner. The other inmate that Petitioner was allegedly fighting with testified that she did not remember striking Petitioner and Petitioner did not strike her. There was a small scratch on the other inmate's chin that the inmate stated that she received prior to arguing with Petitioner and the small scratch on her face was accidently self-inflicted. There were no other witnesses to this alleged fight and no corroborating evidence that there was a fight. Therefore, the "202" violation should have been vacated or thrown out and the sanctions that included inter alia taking away twenty-seven(27) good conduct time(GCT) days and Petitioner's commissary was restricted for 60 days.

    Petitioner received the Disciplinary Hearing Officer Report(DHO) report regarding this shot on or around February or March 15, 2017. Petitioner's Counselor, Mr. Cook even stated on the DHO report that he did not present the DHO report to Petitioner until approximately 90 days after the Disciplinary Hearing. However, the Regional office returned Petitioner's BP-230 alleging that her appeal was untimely and to provide proof that the failure to meet the 20 day deadline was not Petitioner's fault. Petitioner provided this information to the Regional office and her appeal was still denied on the basis that it was untimely. Thereafter, Petitioner filed her BP-230 to the General Counsel's Office in Washington, D.C. This appeal was not reviewed by General Counsel's office and the appeal was returned to Petitioner indicating that Petitioner must submitted a letter from a staff member indicating that it was not Petitioner's fault for the untimely filing of her appeal. Thereafter, Petitioner filed her 28 USC 2241 objecting to the failure of the BOP to review her appeal or allow her to avail herself of the administrative remedy process.

    On or around March 2017, Petitioner received another incident report for allegedly circumventing the inmate telephone system when an inmate called Petitioner's daughter and Petitioner was allowed to talk to her daughter because Petitioner's phone privileges had been suspended. Respondent alleged that this action constituted circumvention of the inmate telephone monitoring system because Petitioner's telephone could not be monitored if Petitioner was using someone else's telephone privileges. Petitioner appealed this incident report on the grounds that this action did not constitute circumvention of the inmate telephone system(ITS) because circumvention requires making telephone calls through another avenue (e.g. texting, cell phone, failing to place the correct names for telephone numbers listed on the contact list, third party calling, third party texting, etc. Also, Petitioner appealed the report because of the sanctions provided that included: (1) twenty-seven(27) days of GCT was taken away; (2) and commissary was restricted for at least thirty (30) days. The telephone shot was a Rule 297 violation that was totally erroneous because the DHO did not have some or any evidence to substantiate the incident report. Regional Office returned Petitioner's appeal and indicated that her appeal was untimely because allegedly the twenty days included mail time and it begun on the date that the DHO signed the DHO report. However, Petitioner's appeal was mail approximately 10 days after she received the DHO report and within the 20 days allowed for the mail to arrive at the Mid-Atlantic Regional Office in Annapolis Junction, Maryland office. The Mid-Atlantic Regional office rejected the appeal and again requested Petitioner to obtain a letter from a staff member to say that it was not Petitioners' fault for the untimely mailing of her appeal. Petitioner argued that it was the SFF responsibility for mailing her appeal and it should not have taken almost a month for Petitioner's appeal to reach Annapolis Junction, MD from Bruceton Mills, WV.

    The last time Petitioner received a 200 series incident report was March 2017 and the last time that Petitioner received a 300 series incident report was approximately during the latter part of 2018. Thus, when Petitioner was reincarcerated and brought back to SFF on 2/9/2021, it had been almost three years since Petitioner had received any 300 series shots and four(4) years since Petitioner received a 200 series incident report.

    After being transferred up and down the southeast and east coast, Petitioner arrived at the Secure Female Facility on 2/9/2021. Petitioner was placed in quarantine for 21 days. T. Slinka Bean was Petitioner's counselor (Bean had never been Petitioner's counselor) and Petitioner's case manager was Mr. Seraralle.

    After completing quarantine, Petitioner was assigned to cell #113 in K-2 unit also known as the behavior unit. Petitioner's bunkee was Dominion Hawkins. Counselor Slinka could not wait to start harassing Petitioner and her bunkee by locking them in their cell for allegedly not having their cell "inspection ready". Both Petitioner and her bunkee were minorities. Counselor Slinka constantly threatened Petitioner and her bunkee that she would write them incident reports for having a bible on their locker, having knit cloth hangers on the wall, etc. and assert that they were not inspection ready

    Counselor Slinka rarely harassed Caucasian females for allegedly not being inspection ready. On March 24, 2021, T.

Slinka falsely alleged that Petitioner failed to obey a direct order by refusing to move to another cell. Petitioner respectfully and pleasantly inquired about alternative cells. Petitioner never at any time refuse to move to a new assigned cell. But T. Slinka went into a psychotic rage and shouted "No" and immediately ordered Petitioner to get out of her office. Petitioner complied and then suddenly, T. Slinka ordered to remain outside her office. Immediately, thereafter Counselor T. Slinka hit her alert button on her service vest and requested other staff members and the compound officers. The Unit Secretary, Ms. Compton, Counselor Ware(K-1 Counselor) and Case Manager Mr. Satterelli came running over and went in Slinka's office to determine the reason for the alert. Thereafter, Lieutenant R. Ware(Counselor Ware's husband) arrived on the unit with three additional compound officers. Lieutenant Ware immediately started inquiring about who was the bitch that cause him to come to the Unit. Lieutenant Ware then ordered Petitioner back to her cell to pack up her shit and move to cell #130. As Petitioner proceeded to her cell, Lt. Ware started yelling that this was the third time that he had been to K-2 Unit this morning and he was sick of this shit. Petitioner stated that she did not call him. Lt. Ware shouted" What the fuck did you say"? Petitioner stated that she was not going to argue with him and that he could walk to her cell while she pack up and she would then tell him what she stated. Lt. Ware and Officer A. McCune, came to Petitioner's cell and Petitioner respectfully stated that she never called or requested Lt. Ware to come to the Unit and perhaps if staff were trained better they would know when to call him for emergencies. Lt. Ware then stated "Fuck You"...Let's go to the SHU. If you do not get your shoes on, I will drag your old ass out of here. Petitioner responded that if that happen then Ware would not be employed with BOP any longer. Ware then stated that he did not give a fuck about his damn job. Petitioner locked her locker and then ask Lt. Ware why she was going to the SHU. Lt. Ware got red in the face and started shouting: "YOU COMMITTED A GOD DAMN CRIME AGAINST THE GOD DAMN UNITED STATES AND I CAN SAY ANYTHING AND DO ANYTHING TO YOU". That is the reason your old bitch ass is going to the SHU. Lt. Ware also shouted "I do not care if you was 100 years old I still would send you to the SHU whenever the hell I feel like it.

    Petitioner was taken to the SHU for 8 days and during this time because Petitioner was already having a serious melt down because she had been illegally removed from HOME CONFINEMENT she feel deeper and darker into depression and she requested to speak with the staff Psychiatrist, Dr. Crouch. After talking with Dr. Crouch, she ordered Petitioner to go to suicide watch area and Dr. Crouch refused to contact any family member that Petitioner had requested. SHU Officer Clark ordered Petitioner to walk from the SHU to Suicide Watch room located within the Health Center. Petitioner was ordered to walk naked with only a Teflon jacket(suicide jacket) and no shoes to the health center. Health Service Staff were outside their offices standing in the hallway, staring at Petitioner including Dr. Adams, Nurse Sines, and other staff members. Petitioner spent one night in the suicide room where it was extremely cold. Two inmates were taking turns observing Petitioner in another room. The restroom contained glass walls and one could see everything that an inmate did in the restroom. The restroom was locked, only the guards had keys and they would handcuff Petitioner's hands when she had to use the restroom. The guards would go off to lunch or dinner for hours causing Petitioner to wait anywhere from two(2) to three(3) hours to relieve herself.

    The Unit Disciplinary Committee (UDC) that consisted of Unit Manager Lori Smith and Counselor M. Ware (Lt. Ware's wife) found Petitioner guilty of failing to obey a direct order because Petitioner admitted that she only went to Slinka's office to determine whether there were other two(2) person cells available because cell #30 toilet was consistently broken and out of order. Petitioner's sanction was 30 days restriction on commissary.

    Petitioner was released from the SHU on March 31, 2021 and she request inmate Connie Moser to contact her ex-husband to inform him of the incidents that had occurred over the past couple of days. Petitioner's telephone nor email privilege were readily available to her on that day because she had just arrived from the SHU.

    Petitioner provided her BP-9 to a SHU officer on April 19, 2021. However, the records reveal that the Warden's office did not receive the BP-9 until April 30, 2021. Petitioner was transferred from SFF on May 13, 2021. The SFF Warden rejected Petitioner's appeal on May 12, 2021. However, SFF staff failed to provide the Warden's response to Petitioner. Petitioner's Marianna Counselor S. Taylor provided a copy of the Warden's response on June 4, 2021. S. Taylor even signed on the first page of the response that she did not provide the response to Petitioner until June 4, 2021. Petitioner filed her BP-230 to the Mid-Atlantic region on 6/11/2021. The Mid-Atlantic Region rejected Petitioner's appeal as being untimely even though Petitioner presented the notation to the Region from Counselor Taylor. Thereafter, Petitioner filed her BP-230 with the BOP General Counsel's office on July 29, 2021. However, the General Counsel's office rejected the appeal and held that Petitioner's appeal had to be sent back to the Regional Office because there was no response from Regional and Petitioner needed a letter from a staff member indicating that the untimely appeal was not Petitioner's fault. The facts clearly show that Petitioner has exhausted all the administrative remedies that were available to her but the Mid-Atlantic Region and the Secure Female Facility(SFF) officials have implemented additional steps in the administrative remedy process that is adverse to Petitioner's right to avail herself of the Administrative Remedy Procedure. Even though Petitioner did not lose any GCT with the Rule 307 incident report, the facts clearly show that SFF prevented Petitioner from appealing the erroneous and unsubstantiated incident reports and thus abusing the administrative remedy procedure. Attached is Exhibit 2 that provides documents filed in this matter that clearly shows that Petitioner exhausted all her administrative remedies.

11(c)

CONTINUATION OF SUPPORTING FACTS FOR GROUND THREE

    Petitioner's 28 USC 2255 motion was placed in the mail slot at SFF on May 13, 2018 and Petitioner also enclosed her motion along with a copy of six months of account statements and other Account information that was dated on or around May 10, 2018. Secure Female Facility never had an inmate legal mailing system during Petitioner's time at the SFF in Hazelton. On or around June 2021, the -Judge in Petitioner's Criminal case ordered Respondent to produce a copy of the inmate legal mailing system to determine the date and time that Petitioner provided her 28 USC 2255 motion to prison officials and or placed in the mail slot in Unit K-2. Instead of producing an inmate legal mail system Respondent (SFF-Hazelton) only produced a mailing log from the U.S. Post Office in Bruceton Mills, WV that only listed certified mail that came from inmates in all four compounds at Hazelton, WV for the entire month of May and June 2018, and the entire months for July and August 2020. This list did not include any mail on May 13th or May 14th 2018 and the list did not contain any mail from Petitioner's on any date for the referenced time period even though Petitioner's mail was marked legal mail and it was labeled certified mail. Thus, Petitioner was prejudiced because the Court accepted Respondent's U.S. Postal listing even though it was not an inmate legal mail ledger from SFF and the U.S. Postal listing could not substitute as an inmate legal mail system ledger.

    On or around April 5, 2021 and shortly after Petitioner arrived at Secured Female Facility(SFF) at Hazelton Compound Petitioner was illegally placed in the SHU again. In the SHU Officers failed to allow Petitioner to utilize the Law Library, failed to provide an ink pen for writing to the Court. Also, Petitioner never received documents that the U.S. District Court Clerk's office (Maryland) submitted to her. However, after Petitioner left the SHU, Officers at K2 Unit failed to provide mail to her or provided legal mail that was opened outside the presence of Petitioner. Respondent also failed to allow Petitioner the opportunity to contest a DHO decision by failing to provide the applicable forms. After Petitioner was illegally transferred, Respondent failed to deliver mail to Petitioner that consisted of an Order from this Court alerting Petitioner to provide additional information with respect to her Motion for Injunctive Release and a copy of the Warden's response to Petitioner's Form BP-9.

**Attachment A**

Supporting facts:
In June, 2020, Petitioner was granted Home Confinement pursuant to the CARES Act. Petitioner's home confinement was approved by the SFF Warden, P. Adams, Director for Federal Bureau of Prisons, Michael Carvajal and U.S. Attorney General William Barr. Petitioner was allowed to transfer to Georgia to live with her daughter. Petitioner was provided with an ankle monitor. Petitioner's performed well on home
CONTINUED ON Page 12(a)

13. Were all of the above grounds presented to another court, state or federal? If not, state which grounds were not presented. If yes, state the name of the court, date of decision, and the nature of the outcome:
The Fighting shot and 2017 telephone shot were presented in a 28 USC 2241 claim on 3/26/2018 in the U.S. District Court for the Northern District of West Virginia. The case was dismissed without prejudice on the allegation that Petitioner failed to exhaust her administrative Remedies.

14. If this petition concerns prison disciplinary proceedings, a parole problem, computation of sentence, or other case under 28 U.S.C. § 2241, answer the following questions:

   A. Did you present the facts in relation to your present petition in the prison's internal grievance procedure?

      ☒ Yes    ☐ No

      1. If your answer to "A" above was yes, what was the result:
      It was alleged that Petitioner did not exhaust her administrative Remedies.

12(a)

## CONTINUATION OF SUPPORT FACTS FOR GROUND FOUR

confinement and she complied with all the terms of her home confinement. On January 4, 2021, Stephen Ricks, Director of Dismas charities, Inc (RRC) through lies and trickery persuaded Petitioner to come to the RRC. No one was available at the RRC to discuss this matter with Petitioner or inform her on the reason she was ordered to come to the RRC. A clerk a the RRC informed Petitioner that she was being held in quarantine for 14 days and the Clerk was not sure on what would happen next. Petitioner was provided a drug test that was negative The next day January 5, 2021, Petitioner was seized by eight U.S. Marshalls and taken to Denton Detention Center in Love Joy, GA. The U.S. Marshall allege that Petitioner would receive information regarding why she was removed from home confinement at the Deyton Detention Center in Lovejoy, GA since there was no notice, warrant or subpoena provided to Petitioner. A Correctional Officer at Denton Detention Center provided Petitioner with a BOP transfer form that was signed by Nicole Chisholm, RRM that erroneously indicated that Petitioner was being transferred because of disciplinary reasons. The Transfer form was not correct because prior to any movement, there should have been notice or due process. also, the transfer form was incorrect because Petitioner had not incurred any disciplinary or incident reports and she never resided at Dismas Charities. While at Denton Detention Center, Petitioner filed a motion for an Order requiring Respondent to show cause why she was illegally removed from home confinement. This motion was filed in the Northern District of Georgia. However, a Magistrate Judge did not act on Petitioner's Motion to show cause but instead converted Petitioner's Motion into a civil rights lawsuit pursuant to 42 USC 1983. Petitioner objected to this action because her motion was not a direct claim or lawsuit but a motion to determine why Petitioner had illegally removed her from home confinement without providing any notice, subpoena, hearing or warrant.

    The most tragic element that made the removal of home confinement illegal was the failure to provide due process. Respondent's decision to remove Petitioner from home confinement violated Petitioner's right to substantive and procedural due process of the 14th Amendment. Also, there is no dispute that Petitioner complied with all conditions of her home confinement and Petitioner had not committed any crimes and thus, there was no legal reason or rationale to remove Petitioner from home confinement. Petitioner was prejudiced by this removal because she caught COVID-19, and now she suffers from long term effects of COVID-19 that includes shortness of breath, chronic asthma, aggravated COPD and sinus issues. Petitioner's chronic health problems began after she was incarcerated in October 2014. FBOP has failed to adequately accommodate Petitioner's various chronic illnesses that include respiratory problems, diabetes, hypertension, foot problems, dental issues, etc. Petitioner's health problems have increased tremendously because of FBOP failure to accommodate or adequately treat Petitioner's various health problems including the lingering and long term effects of COVID-19. Also, Petitioner was prejudiced as a result of this illegal removal from home confinement because of the various tragedies that has occurred since January 2021 including but not limited to: (a) Brother died from Prostate Cancer on March 1, 2022; (b) Former Spouse and Life Time Partner died from a freak bicycle accident on April 17, 2022; (c) First Cousin (male) died from a bad liver transplant in May 2022; (d) Petitioner was not allowed to be with her family during these bereavement periods or show support during this time; (e) Petitioner was unable to console her only child(adult daughter) and assist with the wrapping up of her former spouse's estate. Petitioner is much older now and instead of her health problems becoming stabilized the problems have tremendously increased as a result of the illegally removing Petitioner from home confinement on January 5, 2021.

**Attachment A**

2. If your answer to "A" above was no, explain:

    _____
    _____
    _____

B. If you are a federal prisoner, did you present your claim to the Bureau of Prisons or other federal agency for administrative action?

   ☒ Yes      ☐ No

1. If your answer to "B" above was yes, what was the result: It was alleged that Petitioner did not exhaust her administrative Remedies

2. If your answer to "B" above was no, explain:

    _____
    _____
    _____

15. Relief: State here, as briefly as possible, exactly what you want the court to do for you:

    1. Make **no** legal arguments.
    2. Cite **no** cases or statutes.

    Petitioner wishes to Receive all her jail credit that she is entitled too. Petitioner wants the 81 days of Good Conduct Time that was taken away without due process. Thus, with these adjustments Petitioner's Statutory Release date will be February 2, 2023. Also, Petitioner wants any other Relief she might be entitled too. See Exhibit 1.

Attachment A

16. If a previous motion to vacate or modify a prisoner's sentence, pursuant to Section 2255, was not filed, or if such a motion was filed and denied, the reasons why Petitioner's remedy by way of Section 2255 is inadequate or ineffective to test the legality of the detention.

_____N/A_____

Signed this __18th__ day of __August__, __2022__.
          (day)              (month)         (year)

_____[signature]_____
Your Signature

_____N/A_____
Signature of Attorney (if any)

I declare (or certify, verify, or state), under penalty of perjury, that the foregoing is true and correct.

Date of Signature: __8/18/2022__   _____[signature]_____
                                                  Your Signature